# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KENNETH HUNTER,**

      Petitioner,

**v.**                                         **Civil Action No. 2:10CV2**
                                                   **Criminal Action No. 2:05CR49**
**UNITED STATES OF AMERICA,**                 **(JUDGE MAXWELL)**

      Respondent.

## REPORT AND RECOMMENDATION
## THAT §2255 MOTION BE DENIED

### I. Introduction

On January 6, 2010, *pro se* petitioner, Kenneth Hunter ("Petitioner"), filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] On January 7, 2010, the Government was ordered to respond.[2] The Government filed its response on February 9, 2010.[3] On February 24, 2010, Petitioner filed his reply.[4]

### II. Facts

**A.**     **Conviction and Sentence**

Some time prior to November 8, 2005, the West Virginia State Police (WVSP) and the Polk County Sheriff's Department, Polk County, Florida, conducted a joint investigation into the distribution of methamphetamine. (Sent. Trans. P. 34; Dkt. No. 47). Upon receiving information

---

[1] Dkt.No. 63.

[2] Dkt.No. 66.

[3] Dkt.No. 69.

[4] Dkt. No. 71.

from the State of Florida, the WVSP began working with a confidential informant (CI) that resided in Randolph County, within the Northern District of West Virginia. (Id. at 34-35). Through the investigation, the WVSP obtained a search warrant and were led to Tucker County, within the Northern District of West Virginia, on November 8, 2005. (Id. at 35). After securing a search warrant, the WVSP traveled to the Winwood Motel in Canaan Valley expecting to find Petitioner and his co-defendant in town collecting monies for methamphetamine distribution. (Id.). The search warrants were executed, and the WVSP found and confiscated approximately three and one/half pounds of methamphetamine, approximately one pound of marijuana, personal use methamphetamine and marijuana, and two firearms. (Id. at 35-36). The methamphetamine was found in the car. (Id. at 36). Petitioner and his co-defendant were arrested based on the methamphetamine found in the car; however, after further investigation, the WVSP began to question whether the methamphetamine found in the car actually belonged to Petitioner and his co-defendant. (Id. at 36-37). Though at the time the source of the methamphetamine found in the car was unclear, Petitioner and his co-defendant traveled to West Virginia to collect money for prior methamphetamine distributions from the State of Florida. (Id. at 37). It was the prior methamphetamine distributions for which Petitioner was charged in the one-count Information.

On December 9, 2005, Petitioner pleaded guilty by agreement to a one-count Information, aiding and abetting in the distribution of more than five hundred (500) grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 in the Northern District of West Virginia in Elkins. (Dkt. No. 4). Petitioner waived his right to appeal and to collaterally attack his sentence if the sentence was consistent with Guideline Level 31 or lower. Specifically, Petitioner's plea agreement contained the following language regarding his waiver:

2

13. The parties realize the Guidelines are now advisory, and not mandatory. Nonetheless, the defendant waives the right to appeal or collaterally attack any sentence, or the manner in which it was determined, on any ground whatever, if the sentence is consistent with Guideline Level thirty-one (31) or *lower*. This includes any ground set forth [in] 18 U.S.C. 3742 (Review of Sentence) and 28 U.S.C. 2255 (habeas corpus). The United States makes the same waiver with respect to any sentence consistent with a Guideline Level thirty-one (31) or *higher*.

(Plea P. 5; Dkt. No. 4).

Petitioner entered his plea on December 9, 2005, in open court. Petitioner was thirty-six (36) years old and was educated holding an Associates in Science degree in Culinary [sic]. (Plea Trans. P. 10; Dkt. No. 47). The Court specifically asked Petitioner if he understood the waiver of his appellate rights, and Petitioner responded "yes." (Id. at 27). The Court asked Petitioner's counsel if he believed Petitioner understood the consequences of a plea of guilty, and Petitioner's counsel said he was satisfied that Petitioner was aware of those rights. (Id. at 28). Petitioner advised the Court that he was guilty of Count One. (Id. at 33). During the plea hearing, the Government presented the testimony of Christopher Snodgrass, Corporal in the Bureau of Criminal Investigation, West Virginia State Police, to establish a factual basis for the plea. (Id. at 34-37). Petitioner did not contest the factual basis of the plea.

Petitioner further stated under oath that no one had attempted to force him to plead guilty and that he was pleading guilty of his own free will. (Id. at 39). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 40). Petitioner testified that his attorney had adequately represented him and that his attorney had left nothing undone. (Id. at 41).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily and that Petitioner understood the consequences of pleading guilty. (Id. at 41).

Petitioner did not object to the Court's finding.

On April 17, 2008, Petitioner appeared before the Court for sentencing. (Dkt. No. 37). The Court concluded Petitioner's total offense level to be 32. (Sent. Trans. P. 15; Dkt. No. 51). Based on the total offense level and Petitioner's Criminal History Category VI, the Court determined the range of imprisonment to be 210-262 months to be followed by five (5) years supervised release. (Id.). Petitioner was sentenced to 210 months imprisonment and five (5) years supervised release. (Id. at 28).

**B.    Direct Appeal**

Petitioner filed a direct appeal to the Fourth Circuit Court of Appeals on April 24, 2008, arguing his sentence to be unreasonable.[5] On March 30, 2009, in a Per Curiam opinion, the Fourth Circuit Court of Appeals found no error and affirmed the District Court.[6]

**C.    Federal Habeas Corpus**

In his federal habeas petition and supporting memorandum of law, the Petitioner asserts that

(1)    Counsel was ineffective for failing to challenge the search warrant, which led to Petitioner's arrest;

(2)    Counsel was ineffective for failing to enforce the plea agreement against the Government;

(3)    Counsel was ineffective for failing to force the Government to disclose exculpatory information and evidence;

(4)    Counsel was ineffective because counsel knew Petitioner was innocent yet instructed Petitioner to plead guilty; and

(5)    Counsel was ineffective for failing to file a motion to dismiss.

---

[5] Dkt. No. 42.

[6] Dkt. Nos. 53 & 54.

4

**Government's Response (Dkt. # 69)**

In its response to Petitioner's federal habeas petition, the Government asserts as to grounds 1, 3, and 4 that the misconduct of the confidential informant was promptly investigated by the Government, timely disclosed to Petitioner and to the Court, and was included in the sentencing memorandum. Further, the Government contends that Petitioner waived these arguments by failing to raise them prior to filing this § 2255. As to ground 2, the Government asserts that the Government may refuse to make a downward departure motion unless the refusal is based on an unconstitutional motive or where the refusal is not rationally related to a legitimate government objective. The Government contends it did not move to downward depart because Petitioner failed to provide any assistance in the murder investigation.

**Petitioner's Reply (Dkt. # 71)**

In his reply to the Government's Response, Petitioner responds to Government's response to grounds 1, 3, and 4 by arguing that the Government's investigation was not until after the plea hearing and that counsel failed to object to the illegally obtained search warrant. In reply to Government's response to ground 2, Petitioner requests that the Court allow Petitioner's co-defendant to be interviewed to attest to Petitioner's involvement in the investigation and argues that counsel was ineffective for failing to bind the Government to the plea agreement.

### III. Analysis

**A.    Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded

5

the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.     Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be

6

said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

7

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions

applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

9

The recent unpublished decision United States v. Morris, No. 07-4223, slip op. (4th Cir. Sept. 13, 2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights.

In this case, Petitioner expressly waived his right "to challenge the conviction or the sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255." (Plea Agr. P.3; Dkt. No. 177). However, in the plea colloquy, the Court advised Petitioner that he did not waive rights to postconviction relief for "ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an impermissible purpose." (Plea Trans. P.15; Dkt. No. 179). Therefore, the Court must review Petitioner's claims of ineffective assistance of counsel.

**C.     Procedurally Barred Claims**

Before evaluating the merits of Petitioner's claims, the Court must determine which of Petitioner's issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v.

10

Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

**D.      Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are measured under a two-part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90. Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

A defendant alleging "ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). This burden was recognized by the Fourth Circuit, which held that "when a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [Strickland] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"

11

Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988).

E.      **Claim 1**: Whether Counsel was Ineffective for Failing to Challenge the Search Warrant, Which Led to Petitioner's Arrest

Petitioner claims his counsel was ineffective for failing to challenge the search warrant, which led to Petitioner's arrest. Specifically, Petitioner states that the confidential informant (CI) planted two kilograms of methamphetamine and a firearm in Petitioner's car then called the local police. Therefore, according to Petitioner, the search warrant was based on false information and was unlawfully obtained. Petitioner argues that his counsel was ineffective by failing to request a Franks hearing and by failing to argue the search warrant was unlawfully obtained.

The Government contends that Petitioner is barred from making this claim because he failed to raise the issue of the alleged unlawful search warrant at any point prior to this § 2255. Additionally, the Government contends that the misconduct of the CI was promptly investigated by the Government, was timely disclosed to Petitioner and to the Court, and prior to sentencing the Government submitted a Sentencing Memorandum taking into account the planted evidence.

The Court cannot agree with Petitioner that counsel was ineffective. Petitioner entered a guilty plea; therefore, he must demonstrate that there is a reasonable probability that but for counsel's inefficient conduct, he would not have pleaded guilty but would have proceeded to trial. Hooper, 845 F.2d at 475. Petitioner cannot reach this elevated standard.

Petitioner argues that counsel was ineffective for failing to challenge the search warrant and should have challenged the search warrant under Franks v. Delaware, 438 U.S. 154 (1978). In Franks, the United States Supreme Court held

> where the defendant makes a substantial preliminary showing that a false statement

> knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is sufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 155-156. Petitioner is correct in that his counsel could have moved for an evidentiary hearing to determine probable cause once Petitioner questioned the validity of the search warrant. However, any such request would have been futile and redundant. Once Petitioner alleged that the methamphetamine and weapon were planted in his car, the Government immediately investigated the matter and obtained a confession from the CI.[7] Additionally, at the plea hearing the Government called into question the source of the methamphetamine found in Petitioner's car (Plea Trans. P. 37; Dkt. No. 47) and at the sentencing hearing, the Court noted "the Government's acknowledgment that drugs and the 9mm Tech-9 rifle found in [Petitioner's] car may have been planted there by a confidential informant." (Sent. Trans. P. 8; Dkt. No. 51. See also, Government's Sentencing Memorandum Dkt. No. 39). Despite Petitioner's counsel's neglect to move for an evidentiary hearing, Petitioner's interest and rights were still protected. Therefore, not only can Petitioner not show a reasonable probability exists that but for counsel's inefficient conduct he would not have pleaded guilty, but also Petitioner is unable to show he was prejudiced at all.

Additionally, Petitioner's claim should be denied because Petitioner did not challenge the sufficiency of the warrant at the trial level. The proper procedure for challenging the sufficiency

---

[7] See United States v. Randy Rohrbaugh, 2:06CR19 (NDWV).

of the search warrant is during the initial stages of the criminal proceedings. Fed.R.Crim.P. 12(b)(3) (requiring that motions to suppress evidence be made before trial). If challenged, the issue is then preserved for appeal. United States v. Wilson, 115 F.3d 1185, 1190 (4th cir. 1997). Claims capable of being raised on direct appeal but not may be brought in a § 2255 upon the petitioner's showing of "cause" that excuses the procedural default and "actual prejudice" resulting from the error. Maybeck, 23 F.3d at 891.

Here, Petitioner may not properly bring his claim in a § 2255. Petitioner failed to properly preserve his right to appeal by raising the sufficiency of the search warrant at the trial level. Therefore, the sufficiency of the search warrant was not even capable of being challenged in a § 2255 because it was not capable of being raised on appeal.

Accordingly, Petitioner's Claim No. 1 should be denied.

**F.** **Claim 2**: Whether Counsel was Ineffective for Failing to Enforce the Plea Agreement Against the Government

Petitioner claims that counsel was ineffective for failing to hold the Government to the plea agreement. Specifically, Petitioner alleges that the Government breached the plea agreement by not moving for a downward departure. The Government contends that it properly refused to move for the downward departure. Specifically, the Government contends that it may refuse to make a downward departure motion unless there is an unconstitutional motive or the refusal is not rationally related to a legitimate government objective. According to the Government, Petitioner failed to provide any assistance in the murder investigation; therefore, it was within the Government's discretion to refuse to move for the downward departure.

Petitioner's plea agreement provided for a 5K1.1 departure if Petitioner provided substantial assistance in the investigation of an unrelated murder case. (Plea, P. 4; Dkt. No. 4).

14

The Government has the "power, not a duty, to file a motion [to downward depart] when a defendant has substantially assisted." Wade v. United States, 504 U.S. 181, 185 (1992). Petitioner's counsel made no error because it was not Petitioner's counsel's motion to make. It is within the Government's discretion to file a motion to downward depart under 5K1.1, and Petitioner's counsel played no role in the determination.

Accordingly, Petitioner's Claim should be denied.

**G.      Claims 3 & 4**: Whether Counsel Was Ineffective for Failing to Force the Government to Disclose Exculpatory Information and Evidence, and Whether Counsel was Ineffective Because Counsel Knew Petitioner was Innocent yet Instructed Petitioner to Plead Guilty in Claim 3

Petitioner's Claims 3 and 4 are not ineffective assistance of counsel claims. In Claim 3, Petitioner argues that the charge in the Information was based on a search warrant that was unlawfully obtained. In Claim 4, Petitioner argues that the Government failed to submit to the Court exculpatory information and that this omission caused Petitioner to plead guilty to charges of which he was innocent.

A district court should construe *pro se* petitions liberally, no matter how unskillfully pleaded. See Haines v. Kerner, 404 U.S. 519, 520 (1972). "Although the pleading requirements are construed liberally, '[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted.' 2 Moore's Federal Practice § 12.34[1][b], at 12-60 (3d ed)." Minone v. McGrath, 435 F.Supp. 2d 266 (S.D.N.Y. 2006).

Ineffective assistance of counsel claims must allege specific facts to support a potential

15

finding of ineffective assistance of counsel. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000). In the ten (10) pages of allegations that account for Claims 3 and 4 in Petitioner's brief, only three times is there any mention of counsel's conduct with all three references coming in Claim 4. (Dkt. No. 63, Ps. 18 & 19). In claim 3, Petitioner fails to reference the conduct of counsel at all, let alone counsel's alleged ineffective conduct. Rather, Petitioner concentrates on the alleged misconduct of the Government in failing to disclose exculpatory information.

Petitioner does reference counsel in Claim 4; however, the references are only general allegations of what counsel should have known. First, after commenting on the Government's alleged failure to come forward with exculpatory information, Petitioner states that "[c]ounsel should have known a defendant is not to plea to charges he is not guilty of." (Id. at 18). Next, Petitioner states that the "Government covered up the facts to the Court would accept the plea of guilty. Counsel knew this also." (Id. at 19). Finally, Petitioner states that "it is plain the cover-up disgraceds [sic] the Department. Counsel should have requested dismissal."

Though the Court is to construe the complaints of *pro se* petitioners liberally, the Court cannot guess as to what Petitioner's allegations are. Additionally, Petitioner must allege specific facts to support ineffective assistance of counsel allegations. The ten pages in Petitioner's brief are mostly dedicated to the alleged misconduct of the Government with general statements that counsel "should have known" about the Government's conduct and Petitioner's innocence. Thus, it was not counsel's conduct but rather the Government's conduct that Petitioner opposes. Petitioner failed to support his general allegations with specific facts, which would support the legal theory of ineffective assistance of counsel.

Accordingly, Petitioner's Claims 3 & 4 should be dismissed.

**H.** **Claim 5**: Whether Counsel was Ineffective for Failing to File a Motion to Dismiss

In general, Petitioner argues that counsel was ineffective because Petitioner was innocent of the charges in the Information. More specifically, Petitioner argues that counsel was ineffective for failing to file a motion to dismiss upon determining that Petitioner was innocent of the charge in the Information.

In Claim 5 in his petition, Petitioner states "[p]ut mildly counsel was defective" and "[w]hen counsel found out indeed his client was innocent of the Information. [sic] He should have made a Motion To Dismiss. Counsel did not." (Dkt. No. 63, P. 21). Petitioner does not cite any authority to support his general allegations and theories. Additionally, Petitioner fails to make more specific arguments concerning counsel's deficiency. See Witherspoon, 231 F.3d at 926. Despite the Court's duty to construe the *pro se* petitions liberally, the Court cannot determine any legal theory which would accord Petitioner relief under this general allegation. Haines, 404 U.S. at 520.

Therefore, Petitioner's Claim 5 should be denied.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the petitioner's Motion to Vacate Set Aside or Correct Sentence (Dkt. No. 63) be **DENIED** and **DISMISSED with prejudice** from the active docket of this Court.

Within fourteen (14) days after being served with a copy of this report and recommendation,

any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: August 23, 2010

/s/ *James E. Seibert*

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE